UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | |
|---|---|
| **JOSE G. RODRIGUEZ, JR.,** § | |
| *Plaintiff,* § | |
| § | |
| vs. § | |
| § | Civil Action No. |
| § | |
| **HONORABLE PETE BUTTIGIEG** § | |
| **SECRETARY OF TRANSPORTATION** § | |
| *Defendant.* § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES the Plaintiff, Jose G. Rodriguez, Jr., by and through his undersigned counsel, and files this Complaint against the Federal Motor Carrier Safety Administration, U.S. Department of Transportation, and in support thereof, respectfully shows the Court as follows:

### NATURE OF THE ACTION

1. This action arises under Title VII of the Civil Rights Act of 1964, as amended, which prohibits employment discrimination based on race, color, religion, sex, or national origin. Plaintiff, Jose G. Rodriguez Jr., a Hispanic U.S. citizen, brings this lawsuit against the Federal Motor Carrier Safety Administration (FMCSA), a division of the U.S. Department of Transportation, alleging systematic and persistent racial discrimination in the workplace.

2. Rodriguez, a dedicated and qualified Motor Carrier Safety Specialist, alleges that he has been consistently denied promotion and equitable treatment in his employment due to his race and national origin. The complaint details a pattern of discriminatory practices, including but not limited to, the assignment of duties and responsibilities commensurate with higher job grades without corresponding promotions or compensation, and the consistent overlooking of Rodriguez for career advancement opportunities in favor of less qualified individuals who do not share his racial or national background.

3. Despite Rodriguez's extensive tenure and exemplary performance, as evidenced by his substantial contributions to the enforcement and compliance initiatives at FMCSA, he has been continually relegated to positions and duties below his skill level and professional experience. The nature of this case is rooted in the systemic failure of the FMCSA to acknowledge and rectify the

clear disparities in treatment and opportunities afforded to Rodriguez compared to his nonHispanic counterparts.

4. This case seeks to address and remedy the ongoing discriminatory practices by FMCSA, which have not only stagnated Rodriguez's career progression but also have wider implications on the equitable treatment of employees within the federal workplace. By bringing this action, Rodriguez aims to ensure that employment practices within FMCSA are conducted in a manner that is fair, just, and consistent with the principles of equality and non-discrimination as enshrined in federal law.

## PARTIES

5. The plaintiff in this case, Jose G. Rodriguez Jr., is an employee of the Federal Motor Carrier Safety Administration (FMCSA). He is a Hispanic U.S. citizen who has held the position of Motor Carrier Safety Specialist. Rodriguez alleges that he has been subjected to racial discrimination and denied equitable treatment and promotion opportunities within the FMCSA.

6. The defendant in this lawsuit, the FMCSA is an agency within the U.S. Department of Transportation. The agency is responsible for regulating and providing safety oversight of commercial motor vehicles. In this case, the FMCSA is accused of engaging in employment practices that are discriminatory against the plaintiff based on his race and national origin.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over the present case under Title 28 of the United States Code, specifically 28 U.S.C. § 1331, as this action arises under a federal statute, namely Title VII of the Civil Rights Act of 1964, as amended. Title VII provides the legal foundation for claims of employment discrimination based on race, color, religion, sex, or national origin within federal agencies and entities. Further, this Court is vested with federal question jurisdiction, as the case involves the interpretation and application of a federal law. Additionally, under 28 U.S.C. § 1343(a)(4), this Court has jurisdiction to hear civil rights cases and redress deprivations, under color of any State law, statute, ordinance, regulation, custom, or usage, of any right, privilege, or immunity secured by the laws of the United States or by the Constitution.

8. Given that the alleged discriminatory actions occurred within the jurisdictional boundaries of this Court and involved a federal agency, the Court is duly empowered to hear and adjudicate the matters presented in this lawsuit. The plaintiff, Jose G. Rodriguez Jr., seeks remedies and relief as provided under federal law for the alleged violations of his civil rights within the scope of his employment at the Federal Motor Carrier Safety Administration.

## FACTUAL BACKGROUND

9. Plaintiff, Jose G. Rodriguez Jr., was employed as a Motor Carrier Safety Specialist (GS-2123-07) at Pharr, Texas, commencing October 20, 2002.

10. Upon completing training at the FMCSA Academy, Mr. Rodriguez began his duties in Pharr, Texas, where he attended additional training.

11. In 2003, Mr. Rodriguez submitted his first carrier roadside safety compliance review, initiating a series of similar enforcement actions throughout the year.

12. Despite his growing enforcement responsibilities, Mr. Rodriguez's 2003 performance appraisal did not reflect these duties.

13. Promoted to GS-2123-09 in 2004, Mr. Rodriguez was informed of potential changes to appraisals and a possible promotion to GS-2123-11.

14. In 2004 and 2005, Mr. Rodriguez was led to believe that his increasing enforcement case duties would result in a promotion; however, he received only step increases.

15. FMCSA's Job Analysis in 2005 indicated the position of GS-2123-09 had potential for promotion to GS-11, but this was not realized for Mr. Rodriguez.

16. Mr. Rodriguez's responsibilities continued to align more with a GS-2123-11 role, yet he received no promotion, only step increases in 2005 and 2006.

17. Throughout 2006 and 2007, Mr. Rodriguez's expertise in enforcement cases was recognized, yet without corresponding grade elevation.

18. In 2008, despite discrepancies between his original and revised position descriptions indicating higher responsibilities, Mr. Rodriguez was not promoted.

19. Mr. Rodriguez continued to be recognized for his expertise and contributions in 2009, but again without a promotion reflecting his actual duties.

20. In 2010, Mr. Rodriguez and other inspectors raised concerns about discrimination in promotion practices to FMCSA management.

21. Despite ongoing high performance, Mr. Rodriguez's 2011 appraisal did not lead to a promotion, even as he took on additional training responsibilities.

22. In 2012, he submitted numerous enforcement case reviews and received training recognition, yet remained at the GS-2123-09 level.

23. Mr. Rodriguez discovered in 2013 that GS-2123-11 Position Descriptions existed, contradicting FMCSA's previous assertions and indicating potential discrimination.

24. In 2013, he and other inspectors petitioned for review of their job classifications, alleging discrimination in promotional practices.

25. Despite the substantial enforcement case duties performed, Mr. Rodriguez's position remained at the GS-2123-09 grade level, as evidenced by his work records and performance appraisals.

26. In 2014 and 2015, Mr. Rodriguez's enforcement case numbers and responsibilities continued to reflect those of a higher grade, but without corresponding promotion.

27. FMCSA's communications in 2016 and 2017 acknowledged Mr. Rodriguez's enforcement responsibilities, yet his grade level remained unchanged.

28. In 2018, Mr. Rodriguez received a step increase, but his role's complexity and responsibilities continued to be unaddressed in terms of promotion.

29. The year 2019 brought further recognition of Mr. Rodriguez's expertise in enforcement cases but no advancement in grade or title.

30. In 2020, amidst the pandemic, Mr. Rodriguez's enforcement duties persisted, yet his role and grade remained stagnant.

31. In 2021, due to COVID-19, Mr. Rodriguez could not submit enforcement cases, although his responsibilities required such actions.

32. In 2022, Mr. Rodriguez continued to undertake enforcement actions, but the desk audit and performance evaluations did not reflect his higher-level duties.

33. Throughout his employment, Mr. Rodriguez consistently performed duties beyond his GS-2123-09 grade, as evidenced by the enforcement case reviews and responsibilities, he undertook in 2023.

34. Despite repeated instances of fulfilling higher-grade responsibilities, Mr. Rodriguez remained at the GS-2123-09 level, without promotion to GS-2123-11, as indicated in his performance appraisals and job descriptions.

35. The discrepancy between Mr. Rodriguez's duties and his official grade classification, along with the failure to promote him in line with his responsibilities, persisted despite his repeated and documented performance exceeding that of his current grade level.

36. Throughout his tenure, Mr. Rodriguez observed a pattern of inconsistency in FMCSA's application of promotional standards, particularly in comparison to the treatment of other employees in similar roles.

37. The continual denial of promotion, despite clear evidence of performing duties at a higher grade level, indicates a potential violation of Title VII's provisions against employment discrimination.

38. Mr. Rodriguez's experience of being repeatedly overlooked for promotion, despite meeting and exceeding the requirements for a higher grade, points to systemic issues within FMCSA's promotion practices.

39. The lack of transparency and consistency in FMCSA's promotion and appraisal processes has adversely affected Mr. Rodriguez's career progression and professional development.

40. Despite the consistent performance of higher-grade duties, Mr. Rodriguez's compensation and official recognition remained at a level not commensurate with his responsibilities and contributions to the agency.

41. The failure to promote Mr. Rodriguez in accordance with his qualifications and performance raises questions about the fairness and equity of FMCSA's employment practices.

42. Mr. Rodriguez's situation reflects a broader concern about potential biases in promotion and appraisal processes within federal agencies, particularly in relation to the enforcement of federal motor carrier safety regulations.

43. The ongoing disparity between Mr. Rodriguez's job responsibilities and his official grade level has not only impacted his career but also highlights potential systemic issues within FMCSA's human resources practices.

44. The evidence suggests that Mr. Rodriguez's lack of promotion is not due to a deficiency in performance or qualifications but possibly due to discriminatory practices within the FMCSA.

45. Mr. Rodriguez's efforts to address these concerns through internal channels, including petitions and requests for job classification reviews, have not resulted in substantive changes or recognition of his higher-level duties.

46. The pattern of Mr. Rodriguez being assigned and successfully completing higher-grade responsibilities, without corresponding promotion or recognition, is indicative of possible discriminatory practices in violation of Title VII.

47. The lack of promotion despite Mr. Rodriguez's consistent high performance in complex enforcement duties suggests a failure by FMCSA to adhere to equitable and nondiscriminatory employment practices.

48. Mr. Rodriguez's experience, as supported by his performance records, indicates a potential breach of the principles of fairness and equality in employment as mandated by Title VII.

## DISCRIMINATION BASED ON RACE UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

**Establishment of Prima Facie Case**

49. Plaintiff incorporates by reference all preceding paragraphs into this section as if fully restated herein.

50. As a federal government employee, Mr. Rodriguez is covered under Title VII of the Civil Rights Act of 1964. Title VII, as amended by the Equal Employment Opportunity Act of 1972, extends its coverage to include employees of the federal government. Specifically, 42 U.S.C. § 2000e-16 addresses the application of Title VII to federal employees and agencies, ensuring that these employees are protected from discrimination on the basis of race, color, religion, sex, and national origin.

51. Given that Mr. Rodriguez is an employee of the Federal Motor Carrier Safety Administration (FMCSA), which is an agency within the U.S. Department of Transportation, a federal agency, he falls under the purview of Title VII's protections.

52. Mr. Rodriguez is unequivocally a member of a protected class as defined under Title VII of the Civil Rights Act of 1964. As an individual of Hispanic origin, he falls within the ambit of Title VII's protection against discrimination based on national origin. Title VII, as codified in 42 U.S.C. § 2000e-16, explicitly prohibits discrimination in employment on the grounds of race, color, religion, sex, and national origin. In this regard, Mr. Rodriguez's Hispanic heritage places him squarely within a category shielded by Title VII from discriminatory employment practices. The legislation's expansive scope ensures the safeguarding of Mr. Rodriguez's rights as a federal employee, thereby granting him the legal standing to seek redress for alleged discriminatory acts perpetuated based on his national origin.

53. The Plaintiff was qualified for his position and performed his job duties satisfactorily. Throughout his tenure with the Federal Motor Carrier Safety Administration (FMCSA), the plaintiff consistently demonstrated his qualifications and competency for the position of Motor Carrier Safety Specialist. This is evidenced by his successful completion of the FMCSA Academy training, his prompt and proficient submission of carrier roadside safety compliance reviews, and the recognition of his expertise in roadside enforcement cases which include Notice of Claims in multiple annual performance appraisals. Despite the increasing complexity and volume of his responsibilities, which aligned with those of higher-grade positions, the plaintiff maintained a high standard of performance. His consistent adherence to the FMCSA's regulations and procedures, along with his significant contributions to the agency's enforcement actions, unequivocally prove that he not only fulfilled but often exceeded the requirements of his GS-2123-09 position. The plaintiff's sustained excellence in executing his duties, as detailed in

various exhibits and performance records, clearly establishes that he was more than qualified for his role and performed his job duties to a commendable and noteworthy standard.

54. The plaintiff suffered a significant adverse employment action when he was unjustly denied promotion despite his manifest eligibility and qualifications. Despite fulfilling and surpassing the expectations for his role as a Motor Carrier Safety Specialist, and frequently performing duties commensurate with higher-grade positions, the plaintiff was continually overlooked for promotion to the GS-2123-11 level. This persistent non-promotion, highlighted by a series of step increases that did not correspond to the elevation in job responsibilities and skills, constitutes a clear and tangible detriment to his career progression. The lack of advancement, despite the addition of enforcement duties to his role and his proven expertise, as reflected in his performance evaluations, signifies a detrimental impact on his professional standing, opportunities for career growth, and potential earnings. This denial of promotion, therefore, amounts to an adverse employment action against the plaintiff, in contradiction to the principles of merit and fairness that govern employment decisions within the Federal Motor Carrier Safety Administration.

55. The adverse employment action taken against the plaintiff occurred under circumstances that raise a strong inference of discriminatory intent based on race. Notably, the category of Border Inspectors, including the plaintiff, who were consistently denied promotion, are predominantly stationed along the U.S.-Mexico border. This geographical placement inherently indicates that these inspectors are likely to be of Hispanic origin or race and proficient in Spanish. The systemic non-promotion of employees within this category, despite their demonstrated qualifications and the added enforcement responsibilities, suggests a pattern of discrimination. The consistent denial of advancement opportunities to this specific group, who share a common racial and ethnic background, and who perform critical and specialized roles in a linguistically and culturally unique area, points to an underlying bias in employment practices. This pattern of denying promotions to Border Inspectors, who are predictably of Hispanic descent, thereby raises a presumption of discriminatory intent based on race, further substantiated by the lack of a justifiable or merit-based rationale for the continuous non-promotion of these qualified employees.

**DAMAGES**

56. This lawsuit seeks remedies for violations of Title VII of the Civil Rights Act of 1964, which provides for various forms of relief for employment discrimination based on race. The remedies available and pursued in this case encompass a comprehensive range of both equitable and monetary damages, as authorized by Title VII. Specifically, we seek:

> a. Back Pay and Lost Benefits: Compensation for lost wages and benefits from the date of the discriminatory act to the present, including salary, bonuses, pension contributions, and other employment benefits.

b. Front Pay: In lieu of reinstatement, or where reinstatement is not feasible, compensation for future lost earnings and benefits extending from the present until such time as the complainant can reasonably secure comparable employment.

c. Reinstatement or Equivalent Position: Reinstatement to the complainant's former position or placement in an equivalent position that the complainant would have attained but for the discriminatory conduct.

d. Compensatory Damages: Compensation for past and future non-economic losses resulting from the discrimination, including emotional distress, pain and suffering, inconvenience, mental anguish, and loss of enjoyment of life.

e. Punitive Damages: Where the defendant's actions are found to be malicious or recklessly indifferent to federally protected rights, punitive damages may be pursued to deter similar future conduct.

f. Attorney's Fees and Costs: Recovery of reasonable attorney's fees, expert witness fees, and other costs associated with bringing this action, as Title VII entitles prevailing plaintiffs to such costs.

g. Injunctive Relief: To prevent further discrimination and to remedy the effects of past discrimination, we seek an order requiring specific actions by the defendant, such as policy changes, training programs, or other measures to promote a discrimination-free workplace.

h. Interest: Interest on any monetary awards, calculated from the date of the discriminatory act to the date of payment.

## JURY DEMAND

57. Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, the Plaintiff hereby demands a trial by jury on all issues so triable within this action.

## PRAYER

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief: (1) A declaratory judgment that the actions and practices of the Defendant were unlawful and violated Plaintiff's rights under Title VII of the Civil Rights Act of 1964; (2) An order requiring Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities and which eradicate the effects of its past and present unlawful employment practices; (3) An order directing Defendant to promote Plaintiff to the position for which he was qualified and unfairly denied, along with back pay and benefits retroactive to the date the promotion should have been granted; (4) Compensation for past and future pecuniary losses resulting from the unlawful employment practices of the Defendant, including lost wages, benefits,

and other financial loss; (5) Compensation for past and future non-pecuniary losses resulting from the unlawful practices of Defendant, including emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation; (6) Punitive damages for the malicious and reckless conduct of the Defendant; (7) An order requiring the Defendant to pay Plaintiff's costs and attorney's fees incurred in this action; and (8) Any further relief that this Court deems just and proper. Plaintiff also demands a trial by jury on all claims so triable.

Respectfully Submitted,

**VARGAS GUERRA LLP**

324 W University Drive
Edinburg, Texas 78539
Tel. (956) 380-1748
Email: litigation@vargasguerrallp.com

_____
Daniel E. Vargas
Southern District No. 1286250
TX State Bar No. 24072403
Email: bigdan@vargasguerrallp.com
Lisa Y. Guerra
Southern District No. 2506606
TX State Bar No. 24112407
Email: lisag@vargasguerrallp.com

***COUNSEL FOR PLAINTIFF***